## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 01-02-15000 |
| FORD MOTOR COMPANY PANTHER | ) | |
| PLATFORM/FUEL TANK DESIGN | ) | MDL Docket No. 1488 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| ***This Document Relates To:*** | ) | |
| | ) | |
| Ohio Patrolmen's Benevolent | ) | |
| Association, Inc., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Terrence Gallagher | ) | **MEMORANDUM OPINION** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ford Motor Company, | ) | Individual Case No. 01-03-15005 |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court upon this Court's *sua sponte* review of the

Complaint filed by Plaintiff Ohio Patrolmen's Benevolent Association, Inc. ("OPBA") and

Terrence Gallagher.  For the reasons set forth below, the Complaint filed by OPBA is dismissed

with prejudice.

## FACTUAL BACKGROUND[1]

This lawsuit was filed in the United States District Court for the Northern District of Ohio

---

[1] Unless otherwise stated, the facts as presented have been taken from the pleadings filed by both parties, and appear to be uncontested.  Where facts are in dispute, they have been viewed in the light most favorable to the Plaintiff, OPBA, which is the non-moving party.

and was consolidated with other cases involved in Multidistrict Litigation against Ford.  It is

another in a series of claims regarding the alleged defects in the Crown Victoria Police

Interceptor ("CVPI") manufactured after 1992 by Ford.  The bulk of the complaints against Ford

assert that CVPIs expose police officer occupants to an unreasonable risk of injury or death from

fuel-fed fires in high-speed rear impacts.  In response to these claims, Ford announced in

September of 2002 that it would voluntarily provide an upgrade kit for post-1992 CVPIs.  The kit

was offered at no cost to CVPI owners and consisted of shields for various axle and fuel tank

components that have the potential to puncture or come into contact with the tank in unusually

high-speed/high-energy accidents.

OPBA  is a labor union representing law enforcement officers and other governmental

employees throughout the State of Ohio.  OPBA has over 6,500 members employed in

approximately 187 police and law enforcement agencies in the majority of Ohio's eighty-eight

counties.  Its purpose is to advance the interests and rights of law enforcement officers.  OPBA

filed the instant case in pursuit of fulfilling this objective, seeking (1) a declaratory judgment that

Ford's current upgrade kits are insufficient, inadequate, and do not substantially enhance the

safety of law enforcement personnel operating or utilizing the vehicles, and (2) an injunction

compelling Ford to research, develop, manufacture, and offer enhancements in lieu of and/or in

addition to the current upgrade kit.

A court may, *sua sponte*, enter an order of dismissal provided that sufficient basis for the

court's action was otherwise apparent from the plaintiff's pleadings. (*Tamari v. Bache & Co.,* 565

F.2d 1194, 1998 (7th Cir. 1977).  This Court finds three grounds for dismissing this Complaint:

(1) OPBA has no standing to bring a lawsuit under Article III of the United States Constitution,

2

(2) the requested remedy is preempted by the Motor Vehicle Safety Act, and (3) the request for equitable relief exceeds the District Court's limitations and should be dismissed on the grounds of sound discretion.

## I. STANDING

### A. Requirements

The Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The Supreme Court has ruled "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, OPBA must demonstrate that its case or controversy meets the requirements for standing in order for this Court to decide the merits of its dispute with Ford. In short, OPBA must show "such a personal stake in the outcome of the controversy" that it warrants invoking federal court jurisdiction. *Baker v. Carr*, 369 U.S. 186, 204 (1962).

To present a "justiciable case," Plaintiff must meet the three well-established requirements for standing. First, there must be an injury in fact, economic or otherwise. *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152 (1970). Second, there must be a causal connection between the defendant's alleged misconduct and the plaintiff's injury. *Warth,* 422 U.S. at 505. Third, the proposed remedy must be likely to redress the injury. *Defenders of Wildlife*, 504 U.S. at 561.

3

## B. Analysis

### 1. Injury in fact

For an organization to demonstrate standing, it may seek relief from injury to the organization itself, or in the absence of such an injury, on behalf of injury to its members. *Warth v. Seldin*, 422 U.S. 490, 511 (1979). OPBA does not contend that as an organization it has suffered any physical or financial injuries. Its complaint directly admits that neither OPBA nor OPBA law enforcement personnel own CVPIs and that OPBA does not assert any claims based on contract, warranty, personal injury, or product liability. (Compl. ¶¶ 28, 29.) It also does not raise any claims against Ford involving interference with OPBA's ability to maintain membership, raise funds, or provide the services central to its purpose. The face of the complaint states no claims for injury to the organization itself.

OPBA asserts associational standing using the second acceptable option, which allows an organization to bring suit on behalf of its members. The Supreme Court has articulated the test for standing based on member representation:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiff quickly passes the second and third requirements set forth in *Hunt*, however, the first prong is a bit more problematic.

4

The second prong of the *Hunt* test mandates that the interests OPBA seeks to protect must be "germane to the organization's purpose" of advancing the interests and rights of law enforcement officers. *Hunt*, 432 U.S. at 343. Clearly, the safety of OPBA members is one of the primary interests that OPBA was established to advocate; thus, the second prong is satisfied.

OPBA also fulfills the third aspect of the *Hunt* test, which mandates that an association's suit must not need "individualized proof" where "whatever injury might have been suffered is peculiar to the individual member concerned." *Warth*, 422 U.S. at 515-16. The purpose behind this prong is "best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996).

As previously stated, OPBA asserts no contract, warranty, personal injury, or products liability claim that would require individual participation. (Compl. ¶¶ 28, 29.) Instead, the suit alleges that OPBA law enforcement officers who must operate a CVPI are at risk for future injury/death based on the same alleged defect. (Compl. ¶ 23.) The equitable remedy requested would apply equally to all affected officers. OPBA fully represents these officers, bringing claims on their collective behalf for administrative convenience and efficiency.

Furthermore, the type of relief OPBA seeks is significant in fulfilling this prong of the *Hunt* test since monetary damages require the presentation of individual proof while equitable remedies do not. Indeed, the Supreme Court noted that *Hunt* suggests "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members, but ... such participation would be required in an action for damages to an association's

5

members." *United Food*, 517 U.S. at 546. Since individual participation is not necessary in this case regarding claims or damages, the third prong of the *Hunt* test is satisfied.

However, the first prong of the *Hunt* test allows OPBA to bring suit only if its "members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. OPBA's organizational structure is such that its direct members are the individuals operating the CVPIs who have the capacity for injury, and the police departments and cities who own the vehicles and could be subjected to financial loss due to a CVPI accident. The Supreme Court has clearly stated that an organization has standing to bring suit when the "member associations would have standing to bring this same suit on behalf of their own individual members." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9 (1988). OPBA directly represents the individual police officers, and may bring suit on their behalf if the individual police officers it represents have a justiciable case.

Standing based on representation does not eliminate or attenuate the constitutional requirement of a case or controversy. See *Sierra Club v. Morton*, 405 U.S. 727 (1972). Therefore, if an association brings suit on behalf of its members, it must allege that its members "are suffering immediate or threatened injury . . . of the sort that would make out a justiciable case had the members themselves brought suit." *Id*. at 734-41. Establishing an injury in fact is one of the three crucial elements to demonstrate standing in general and to present a "justiciable case." The Supreme Court has defined an injury in fact as "an invasion of legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Defenders of Wildlife*, 504 U.S. at 560 (citations omitted).

6

In lieu of presenting a "concrete and particularized" past injury, OPBA's sole allegation of an injury is that the individual police officers it represents are at "risk of injury/death as a result of a fire/explosion." (Compl. ¶ 23.) In this phase of the proceedings, to "[rule] on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. Even accepting as true the allegations in the complaint, there is no allegation of actual injury, and no claims for stress or fear of injury. (Compl. ¶ 29.) OPBA merely asserts the officers are at risk for future harm.

OPBA's complaint cites several CVPI accidents in the past. Examples were included to illustrate to the court the gravity of the situation and that the drivers of these vehicles are subjected to the threat of actual harm every time the vehicles are put into operation. (Compl. ¶ 19.) All but two of the accidents OPBA cites to illustrate the gravity of harm occurred before September 2002 when Ford offered the upgrade kits. The remaining accident may or may not have occurred with an upgrade kit installed–there is no indication either way. Either way, the complaint specifically states that it does not seek to recover based on any actual injury, therefore, the existence of a handful of past accidents, while possibly relevant to a future risk of injury, is not sufficient in this case to show that future harm is imminent.

The Supreme Court has set a stringent standard for injury in fact when a plaintiff alleges future harm. Mere "allegations of possible future injury do not satisfy the requirements of Article III." *Whitmore v. Arkansas*, 495 U.S. 149 (1990). Rather, a threatened injury must be "*certainly impending*" to constitute injury in fact. *Id.* (emphasis in original) (citations omitted); *Nat'l Air Traffic Controllers Ass'n v. Pena*, 944 F. Supp. 1337, 1342 (N.D. Ohio 1996) (same). In other

7

words, the "threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). *See also Golden v. Zwickler*, 394 U.S. 103, 109 (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *United Public Workers v. Mitchell*, 330 U.S. 75, 89-91 (1947).

Several cases illustrate this high standard requiring a certainty that the injury will occur. In 1974, the Supreme Court ruled that the threat of future harm was too speculative in a case brought by town residents against a magistrate and circuit court judge because "the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." *O'Shea*, 414 U.S. at 496. The Supreme Court also found future injury was too conjectural in cases where injury would required one of the following scenarios (1) a plaintiff having an encounter with the police that would lead to the police administering an illegal chokehold,[2] (2) a former Congressman's prospective future candidacy,[3] (3) police using deadly force against a person fleeing from an arrest that may or may not take place,[4] and (4) a death row prisoner's ability to obtain federal habeas corpus relief (after being denied state post-conviction relief and exhausting his direct appellate review opportunities), a new trial, another conviction, and another death sentence.[5]

---

[2]*Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

[3]*Golden*, 394 U.S. at 109.

[4]*Ashcroft v. Mattis*, 431 U.S. 171, 172, n.2 (1977).

[5]*Whitmore v. Arkansas*, 495 U.S. 149, 156-57 (1990).

In much the same way, for an actual or particularized injury to occur to a member of OPBA, a long and uncommon chain of events must first take place: the CVPI must be hit from the rear by another car operating at high speed, the installed upgrade kit must not properly protect the gas tank, the tank must be punctured so that fuel leaks out, the fuel must ignite, and the officer must not be able to exit the vehicle. Using the Supreme Court's reasoning, OPBA has failed to allege facts within the four corners of the complaint which would support that the threat of injury is imminent, not conjectural or speculative. OPBA fails the test for injury in fact and therefore lacks standing for this Court to decide its case.

### 2. Causal Connection

Even if injury in fact were properly satisfied, OPBA falls short of fulfilling the other well-established requirements necessary for a "justiciable case" to support standing. As previously stated, the second prong of the general standing test calls for a causal connection between the defendant's alleged misconduct and the plaintiff's injury. *Warth,* 422 U.S. at 505. OPBA claims that Ford is the cause of this future risk, because Ford is forcing police officers to drive unsafe cars. In the instant case, however, any alleged defect is now known and it is the police departments or Cities, and not Ford, who compel the officers to continue operating the CVPIs. The police departments, not Ford, are therefore allegedly putting the officers in a position to be harmed if the CVPI is hit from the rear. The causal connection between Ford's alleged misconduct and the threatened injury is broken.

### 3. Redressability of Injury

Finally, the third requirement for standing presents another stumbling block for OPBA

because the proposed remedy must be likely to redress the injury. *Defenders of Wildlife*, 504 U.S. at 561. To say in this case that Ford will find a more effective safety precaution as a result of this Court's order, although hopeful, is only speculative. In short, the Court can not say it is "likely" that by ordering the requested remedy, Ford can and will develop and produce technology that would remove any threat of injury to the individual law enforcement officers of OPBA who operate the CVPI.

For these reasons, OPBA does not have standing for this Court to decide its case and dismissal is warranted.

## II. **PREEMPTION**

Public health and safety are traditionally areas of state concern and, thus, usually fall under the realm of state law. But "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."[6] *Free v. Bland*, 369 U.S. 663, 666 (1962) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 210-11 (1824)). The Supremacy Clause grants this power of preemption, establishing that federal law is the "supreme Law of the Land" and judges must uphold that law. U.S. Const. art. VI. However, when federal preemption issues arise under the Supremacy Clause, the Court must "start with the assumption that the historic . . . powers of the States [are] not to be superseded by . . . [a] Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

The Supreme Court has recognized that preemption occurs in three common situations: (1)

---

[6] Although the equitable remedies are being requested in a federal court, the federal court system has only diversity jurisdiction in this action. Thus, the underlying claim is a state law claim and the state preemption principles apply.

when the statute itself contains preemptive language that is express or implied, (2) where federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" (field preemption), or (3) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (conflict preemption). *Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (citations omitted).

This Court has already ruled in remand orders for the CVPI products liability cases that express or implied preemption as well as field preemption do not apply to the CVPI cases. However, the remand orders did not address conflict preemption.

The Supreme Court has noted "any understanding of the scope of a pre-emption statute must rest primarily on a 'fair understanding of *congressional purpose.*'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996) (emphasis in original) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 at 530, n. 27 (1992) (opinion of Stevens, J.)). In addition to the language of the statute, congressional intent can be gleaned from "the 'structure and purpose of the statute as a whole' . . . [through] reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic*, 518 U.S. at 486 (quoting *Gade*, 505 U.S. at 98).

Following this guideline, the Court must look first to the structure and purpose of the statute and then to its regulatory scheme to determine congressional intent. The stated purpose of the Motor Vehicle Safety Act ("Safety Act") is to "reduce traffic accidents and deaths and injuries resulting from traffic accidents" by setting motor vehicle safety standards and carrying out safety research and development. 49 U.S.C. § 30101 (1996). The Safety Act specifically bestows power on the National Highway Traffic Safety Administration ("NHTSA") and the Secretary of

11

Transportation to prescribe the nation's motor vehicle safety standards, and it outlines certain procedures the Secretary must follow to set these standards, such as giving fair notice of new safety requirements to manufacturers. *Id*. at § 30111 (1996).

The statute also details the measures the Secretary must take when a motor vehicle or its replacement equipment contains a defect or does not comply with safety standards. *Id*. at § 30118 (1996). First, the Secretary must decide a defect exists or the equipment does not comply with safety requirements, notifying the manufacturer of this decision. *Id*. at § 30118(a). The manufacturer is given time to respond and argue against the decision, but if the Secretary is not persuaded by these arguments, he may order the manufacturer to (1) notify owners, purchasers, and dealers of the defect, or (2) remedy the defect or noncompliance. *Id*. at § 30118(2).

OPBA's complaint asks the Court (1) to declare the upgrade kit is insufficient, inadequate and does not substantially enhance the safety of the vehicle, and (2) to compel Ford to research, develop, manufacture and offer for sale and installation different safety enhancements for the CVPI in lieu of and/or in addition to the upgrade kit. (Compl. ¶¶ 44, 45.) The remedies OPBA requests mirror the remedies clearly prescribed to the Secretary of Transportation in 49 U.S.C. § 30118, as described *supra*, and 49 U.S.C. § 30120. The *Secretary*, not this Court, must declare the upgrade kit is inadequate, giving Ford time to respond and argue that the kit is sufficient. If the Secretary still finds the kit is inadequate after Ford has presented its case, then the *Secretary*, not this Court, must order Ford to develop different safety enhancements in lieu of and/or in addition to the upgrade kit.

Granting OPBA's request for remedy would require this Court to directly supercede the provisions of the Safety Act. As stated above, conflict preemption occurs when "state law stands

12

as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98 (citations omitted). If the Court granted such relief, the Court would be acting in the stead of the Secretary of Transportation, whom Congress entrusted with identifying defects and executing the scheme set forth in the Safety Act to remedy such defects. Clearly, this goes against the intent of Congress in enacting the Safety Act.

Furthermore, the Secretary of Transportation has already decided that in spite of the problems with the CVPI, "it is unlikely that further investigation would produce sufficient evidence to demonstrate the existence of a safety-related defect in the [CVPIs]." *NHTSA Closing*, http://www.nhtsa.dot.gov/cars/problems/studies/CrownVict/index.html (viewed June 30, 2004). The NHTSA also pledged to continue monitoring Ford's efforts to enhance the safety of law enforcement officers in motor vehicle crashes, and the Agency stated that it would form a "collaborative partnership" with the International Chiefs of Police to study safety issues and promote police vehicle safety. *Id.*

Ford has offered the upgrade kit to make the CVPI even safer than deemed necessary by the Secretary since there was no CVPI safety defect found. "[A] court ruling essentially 'overturning' the Secretary's decision on the basis of state law would obviously upset the congressional intent of leaving the question to an agency with the expertise, experience, and resources to reach sound decisions." *In re Bridgestone/Firestone, Inc.*, 153 F. Supp. 2d 935, 946 (S.D. Ind. 2001). If the Court were to declare the upgrade kit "inadequate" as OPBA requests, it would not be overturning the Secretary's ruling since that concerned the actual CVPI. But it *would be* calling the Secretary's judgment and discretion into question by ruling that an upgrade kit installed in a CVPI (which was already determined to be adequately safe by the NHTSA) was

13

still not enough to protect the individuals operating the CVPI. This Court will not make a declaration that challenges the efficacy of the Secretary of Transportation. The NHTSA has the resources and the expertise to make a sound decision in such matters and it has done so.

This reasoning is similar to a 2001 class action case where the plaintiffs filed wrongful death, personal injury, and products liability claims based on problems caused by allegedly faulty tires. *Id.* The plaintiffs argued that while the public waited for the NHTSA to act, the death toll from these tires was climbing, and the court should exercise its equitable power to protect the public from the defect problems because that was the only alternative. *Id.* at 946. The district court responded: "We readily acknowledge the moral force behind this argument; nonetheless, it does not change the fact that courts are not authorized to take this step." *Id.* The court went on to add that Congress undoubtedly anticipated delays in reaching a decision even in such a compelling situation, "but the remedy for that problem lies with NHTSA and Congress and not through some unfounded rescue effort taken by the courts." *Id.* Even when safety is the goal, "the structure that Congress set up to accomplish this goal entrusts it to NHTSA and forecloses judicial interference." *Id.*

OPBA's complaint must be dismissed because its request for judicial remedy is preempted by the Motor Vehicle Safety Act under the theory of conflict preemption. 49 U.S.C. §§ 30101-30169 (1996).

## III. <u>EQUITABLE RELIEF</u>

Finally, even if this Court had found that OPBA has standing and its claims were not preempted, the equitable and declaratory remedy requested would be inappropriate. OPBA is asking this Court to grant the extraordinary relief of (1) a declaratory judgment that the current

14

upgrade to the fuel system of the CVPI is insufficient and (2) an injunction compelling Ford to research, develop, manufacture and market a Court approved safety enhancement product for the CVPI. An equitable remedy is appropriate when a "likelihood of substantial and immediate irreparable injury" exists. *O'Shea*, 414 U.S. at 502. A court can use its discretion to grant equitable relief absent an adequate remedy. *Lyons*, 461 U.S. at 111.

Here, the federal law provides a specific and adequate remedy for the alleged problem through the Safety Act. "Regulation by the NHTSA, coupled with tort litigation by persons suffering physical injury, is far superior to a suit by millions of uninjured buyers for dealing with consumer products that are said to be failure prone." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002). If there is existing technology that could solve the alleged problem with the CVPIs, then the equitable relief requested by OPBA is not required because complainants could sue for the cost of adding such technology to the vehicles, or for replacing the Ford vehicles with other safer cars that include such technology. If there is no existing product, then there is no guarantee that such relief is even technologically possible, let alone feasible for Ford to manufacture.

Further, this Court finds no precedent of any court compelling a company to research, develop, manufacture and market a product or product upgrade that is not yet in existence. It is a frightening proposition to think that a court could compel a manufacturer to develop and market a currently non-existent product. Courts do not have the expertise to determine what safety enhancements are feasible and effective. This country has always depended on the free market system to encourage and reward the development of the most effective and efficient products. This Court is unwilling to take on a role that extends far beyond the scope of the judiciary

15

function and abilities, which would put a serious strain on Court and party resources, and could, in effect, challenge the system upon which our economy has been founded.

Ford cannot be compelled to produce new products. It could be legally required to stop selling cars that are determined to be defective, or to pay monetary damages for injuries actually suffered as a result of any defects, or to add warnings and disclosures identifying any known risks associated with its cars. It could even decide on its own to stop producing CVPIs at any time for any reason. But, it cannot be legally required to create, market and sell a theoretical product, however beneficial, just because a group of consumers deems it desirable.

## CONCLUSION

For all of the above reasons, the OPBA's Complaint is dismissed. OPBA lacks standing; the equitable relief requested is preempted by the Motor Vehicle Safety Act under the conflict preemption theory; and issuing the declaration and judgment requested exceeds the limitations on this Court in granting equitable relief.

IT IS SO ORDERED.

_Donald C. Nugent_

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATE: _September 27 2005_

16